**In re Stanley Salas GAVIA and Patricia Ann Gavia, Debtors.**

**Bankruptcy No. BK–S–281–03078–W.**

United States Bankruptcy Court, E.D. California.

Feb. 22, 1982.

Melvyn CoBen, P.C. by Nancy Eichler and John Tosney, Sacramento, Cal., for debtors.

Russell, Jarvis, Estabrook & Dashiell, A Law Corporation by David E. Russell, Sac-

ramento, Cal., for trustee Lawrence J. Loheit.

## OPINION INCLUDING FINDINGS OF FACT AND CONCLUSIONS OF LAW

ROBERT E. WOODWARD, Bankruptcy Judge.

The Bankruptcy Code has materially affected the practical effect in Chapter 13 by some philosophical and sociological changes in attitude. The result has been in some areas to make Chapter 13 the equivalent of a Chapter 7 but with some darker overtones that in many areas have resulted in discrediting Chapter 13 as a worthwhile method beneficial to both creditors and debtors.

Apparently Congress has attempted to combine apples and oranges with no better success resulting than the mouth-pucherin effect of a chokecherry.

Innovative lawyers are seeking to torture Chapter 13 to be all things for debtors to avoid if possible contractual payments agreed to with their creditors.

The Court is faced with the practical problem of seeking to assist in the general welfare of society and properly enforcing contractual rights of the parties in business transactions.

A perplexing problem arises where the sole or major asset of a Chapter 13 debtor is the equity in his home and the essence of the plan is to hold all creditors in abeyance for a period of time within which the debtor will seek to sell his home and have the creditors paid from the proceeds of his equitable interest. Is this alone enough to justify preventing the secured creditor, after debtor is in default, from proceeding with his right to foreclose pursuant to the note and deed of trust entered into by the debtor and the secured creditor, as well as holding in abeyance all other creditors secured and unsecured?

Some generalities should be considered to enable a responsible answer to this question. 11 U.S.C. 1322[b][8] sets forth that a plan may "provide for the payment of all or any claim from property of the estate or property of the debtor". 11 U.S.C. 1322[b][2] allows a plan to "modify the rights of holders of secured claims other than a claim secured only by a security interest in real property that is the debtor's principal residence . . .", but notwithstanding this statement under 11 U.S.C. 1322[b][5] a plan may ". . . provide for *the curing* of any default within a reasonable time and *maintenance of payments* while the case is pending on any unsecured claim or *secured claim* on which the *last payment is due after the date on which the final payment under the plan is due*".

Adequate protection must be afforded the secured creditor as provided in 11 U.S.C. 361. The legislative history defines adequate protection as follows: "The concept is derived from the 5th Amendment protection of property interest . . ." "It is not intended to be confined strictly to the constitutional protection required, however. The section, and the concept of adequate protection, is based as much on policy grounds as on constitutional grounds. *Secured creditors should not be deprived of the benefit of their bargain*".

Chapter 13 cannot and does not operate in a vacuum. There is and has to be a practical administration. This is provided through the operation of the Chapter 13 standing trustee's office through funds provided proportionately by all debtors through a deduction of allowable funds from their payments as provided by the Code.

11 U.S.C. 1325 provides for a number of criteria that must be present before the Court shall confirm the plan, among which are good faith, payments to unsecured creditors not less than they would receive under Chapter 7, the value of secured claims to be not less than the security value as of the effective date of the plan, and that the debtor will be able *to make all payments under the plan* and to comply with the plan.

Let us now consider the issues presented in the above-entitled case. The debtors have both secured and unsecured creditors. The major creditors are those holding a note and first deed of trust and a note and

second deed of trust, both of which are delinquent in payments. Within a period of six months after confirmation, the plan proposes to sell the real property secured by the first and second deed of trust. This realty is presently used as the debtors' dwelling.

While it may be contended that the offer by debtors to sell their dwelling within a stated period of time might be considered their best effort and in good faith [since there appears nothing else that he can do], this proffer should be considered in the light of reality. The Bankruptcy Code gives a debtor an absolute right to dismiss or convert his Chapter 13 to a Chapter 7 case. What assurance do creditors get in exchange for the apparent detriment to them of receiving no payments incurring additional liability by the necessity of paying taxes and insurance for the hope that the property will be sold and payments made? At least in this instance there is none. There is nothing to prevent a debtor whose home is sold during the period of time the creditors are restrained from waiting until the escrow is about to close to convert his Chapter 13 to a Chapter 7 proceeding, claiming his homestead exemption, and thus wiping out any equity as well as his creditors other than those directly secured by the realty.

Additionally, there is no certainty that any piece of real property can be sold in the foreseeable future with any degree of certainty in a specified period of time for a sum great enough to cover notes and deeds of trust upon the property, taxes, insurance and costs. It is a reasonable interpretation of Section 1322[b][5] that while contractual rights of a secured creditor cannot be affected, curing of a default might be allowed if done within a reasonable time and while making ongoing payments.

The debtors filed their Plan on September 10, 1981. At the confirmation hearing, October 21, 1981, it was contended that confirmation should be denied because no ongoing payments were to be made to the trustee and no payments provided for the real property secured creditors, resulting in lack of adequate protection. The debtors contended that there was equity in the real property sufficient to protect the secured creditor and that they were willing that the remainder between secured claims and selling price be used to pay all remaining creditors if possible.

An opportunity was presented for the presentation of memos to assist the Court in determining whether or not confirmation should be granted.

Memoranda have been filed and considered by the Court.

Debtors seek confirmation of a plan consisting solely of their offer to attempt to sell their dwelling, which is security for notes and deeds of trust held by certain creditors, the contractual payments on which are delinquent at the time that the petition for relief under provisions for Chapter 13 was filed. Creditors are to be paid from the proceeds.

For resolution of the problem we must consider the criteria heretofore mentioned in contemplation of the factual issues presented.

Does restraining all creditors for the sole purpose of liquidating the debtor's major asset [his dwelling] within a period of six months to pay all creditors from any equity create a plan that should be granted confirmation?

The answer is no. The reasons for the negative answer are: 1) The possible liquidation of the debtor's home for the hoped-for sale price within a specified time in a depressed market would not convince a reasonable person that the debtor will be able to comply with his plan. 2) There are no on-going contractual payments to secured creditors. 3) There are no payments to be made to the trustee. 4) The proposed Plan is unfair and inequitable to debtors performing their plans, since the debtors herein would not be bearing their proportionate share of the costs necessary to maintain the administration of Chapter 13 procedure through the operation of the standing trustee's office.

The Court concludes as a matter of law that confirmation of the proposed plan should be denied for failure to comply with the provisions of 11 U.S.C. 1322[b][5], 11 U.S.C. 361 and 11 U.S.C. 1325.

The Court intends this opinion to include Findings of Fact and Conclusions of Law.